THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
CATALINO SANTOS CORNIER, Defendant and Appellant.

No. CR-67-289.　　　Decided April 2, 1969.

*Héctor Lugo Bougal* for appellant. *Rafael A. Rivera Cruz,
Solicitor General, J. F. Rodríguez Rivera, Deputy Solicitor
General,* and *Lolita Miranda, Assistant Solicitor General,* for
The People.

PER CURIAM: Catalino Santos Cornier was convicted of
the offense of aggravated assault consisting in having
assaulted Luis Torres Santiago with a revolver, firing a
shot at him without wounding him. A $100 fine was imposed
on him.

He alleges that the trial court erred in failing to grant
appellant the benefit provided by law when there is a well-
grounded and reasonable doubt.

According to the record appellant and his son Catalino
Santos Matos were accused, each one, of violating § 8 of the
Weapons Law and of aggravated assault. Santos Matos was
charged, also, with the violation of § 6 of said Law. The jury
found Santos Matos guilty of the violation of § 8 of the

Weapons Law and acquitted appellant of such violation. The judge found both of them guilty of aggravated assault and Santos Matos of the violation of § 6 of the Weapons Law.

Justice of the Peace Juan Rosario Torres testified that while he was traveling along the highway from Ponce to Peñuelas he stopped when he was called by a person from a group standing at the edge of the road about three or four kilometers from Ponce. The person who called him, also, requested Santos Matos to come down from a neighboring hill where "he was having a certain argument with a man . . . ." The former came down. He had a revolver loaded with three bullets. He gave it to appellant and the latter delivered it to the witness, who identified the weapon.

Luis Torres Santiago testified that because he carried away appellant's daughter on the day on which the facts occurred, appellant fired a shot at him from the edge of the road; that he started to run and then Santos Matos snatched the weapon from appellant and fired two more shots at the witness. He was not wounded.

Witness Esperanza Torres Santiago testified that she was Torres Santiago's wife, that she accompanied the Santos and appellant's wife to go in search of the latter's daughter and of Torres Santiago; that when they found them appellant fired two shots at Torres Santiago and then Santos Matos took the revolver from his father and fired two more shots at Torres Santiago. All the shots were fired into the air. When she was asked whether she had testified that "They fired into the air and then my husband ran away" she answered that "So it was."

Appellant testified that his son was the one who fired the shots into the air and he did it so that Torres would stop. He admitted that the revolver was his and that it was registered in his name, but his son took it.

■ Although the rule is not to disturb the weighing of the evidence made by the trial court in the absence of a

showing of passion, prejudice, and partiality, the following circumstances induce us to conclude that said weighing of the evidence was erroneous; that we must reverse the judgment in this case and acquit appellant:

■ (a) Appellant is a merchant over 74 years old; he testified that the revolver was registered in his name, from which fact it is inferred that he was a person without a criminal record. His testimony is moderate, logical, and credible. He testified that about nine months earlier Torres carried away the mentally deranged girl, appellant's daughter, to a thicket and raped her; that at the time of the facts which gave rise to this action Torres again carried her away. Torres himself admitted it at the witness stand. Appellant testified that:

"I started immediately, and also her mother and her brother, to look for her. As we did not find her we stopped by the road beyond the school; then he [Torres] passed by in a car with the girl and he went along the road and took her to Peñuelas. Then I called the Police station and asked them to come and arrest this man who had seized a girl by force and had carried her away; so that they would find her and bring her back to me, but nobody came. Neither the police nor anybody else came. Then we boarded a car which was passing by and went in search of them; then, when we had traveled a little the car in which the girl had passed by was coming back. We asked the chauffeur where had he left the passengers . . . . Then we came to the slope in the *Pastillo* and started to look in the thicket.

THE COURT:

Looking for your daughter?

Yes, sir. My little daughter was with us, too. Then, when we came to the river a little girl from there, who was also with us, found them below the road. Then she said: 'Look, here is the man', the girl said.

DEFENSE:

Where was he?

In the thicket.

With your daughter?

Yes, below the road. Then when I called the girl he realized it was I and ran away. Then my son went to catch him. Then, when he came up the road he hurt himself, he was drunk.

Some shots were fired there, who fired them?

My son fired some shots into the air, so that he would stop."

When appellant is asked about the revolver he testifies that it is his; that it is registered; that his son was the one who took it, took it to the scene of the crime and fired the shots into the air so that Torres would stop; that at the scene of the crime "I had no revolver at all; if I happen to have a revolver—I do not pick up a quarrel with anybody—but God knows. Do you know what it means to have a daughter who has been like that [mentally deranged] for 13 years and that such a thing happens to her . . . ?"

(b) Justice of the Peace Jorge Rosario Torres, who had not seen appellant before, testified that Santos Matos had the weapon; that appellant asked him for it, and when the former received it he delivered it to the witness and then they explained the problem they had; that appellant "simultaneously explained to me, very courteously, what had happened at that time . . . ."

(c) In opposition to the foregoing, it appears from the record that Luis Torres Santiago had been convicted of assault to commit murder, and accused of having previously raped the same mentally deranged girl, whom he admits having carried away on the occasion which gave rise to this action. Torres testified that he was single. Later he said that Esperanza Torres was his wife; that he carried away the mentally deranged girl, appellant's daughter, and that when appellant found her "there in Peñuelas, he was carrying a revolver and he fired a shot . . . at me and at her"; that then Torres ran away and appellant's son snatched the revolver from his father and fired two more shots at the witness. He denied that appellant urged his son to deliver the weapon. After his statement was read to the prosecuting attorney, he

testified that, "There is something in my statement about which I lied, that I did not remember at that moment, that is why I said I did not remember. . . . There is a part which says that there was one person who swayed his hand. That is the part that I could not remember."

(d) Esperanza Torres, Torres' wife or concubine, first testified that appellant as well as his son fired two shots at Torres. On cross-examination she said that such shots were fired into the air, that is, not at the person of Torres, as she had previously indicated. When asked whether she was interested in preventing that Torres be sent to jail she answered, "Surely not." She said she saw another person at the scene of the crime but that she did not see that the former swayed appellant's arm as Torres had indicated.

The testimony of Torres, a hoodlum with a criminal record, who, despite having been accused of having previously raped the prosecutrix, clearly admitted that he had once more taken that unfortunate creature away with him on the occasion which gave rise to this action, does not deserve credit. He said that he saw Santos Matos snatch the revolver from appellant. That is not credible since previously he had testified that when appellant fired at him, the witness ran away and went to a place at about 300 meters away from the scene of the crime. Hence, necessarily he rapidly ran away with his back toward appellant and his son, and he could not see what was happening between them. He himself affirms it when he was asked whether, when the group originally appeared, he saw appellant, his son, the mother, another little daughter, and one more person, he answered, "Well, I did not notice because I was running, then the justice appeared." From this testimony we infer that when the group arrived at the place where Torres and the deranged girl were the former ran away and that the shots were fired while he was running, so that Torres was not in a position to see who fired.

Esperanza Torres contradicted herself in the course of her testimony. Furthermore, it may be inferred from it that the purpose of her testimony was to spare her husband Luis Torres Santiago from going to jail. Hence, in our opinion, the conviction in this case cannot be sustained on the basis of her testimony.

In view of the foregoing, the judgment rendered in this case by the Superior Court, Ponce Part, on August 6, 1965, will be reversed and appellant will be acquitted.

Mr. Chief Justice Negrón Fernández dissented. Mr. Justice Rigau delivered a dissenting opinion in which Mr. Justice Torres Rigual concurs. Mr. Justice Santana Becerra did not participate herein.

—O—

MR. JUSTICE RIGAU, with whom MR. JUSTICE TORRES RIGUAL concurs, dissenting.

San Juan, Puerto Rico, April 2, 1969

A fine of $100 was imposed on appellant for firing a revolver shot at another human being. The controversy is strictly based on the weighing of the evidence. I do not believe that the reversal of the weighing of the evidence made by the trial court is justified. Mr. Justice Torres Rigual, with whom several Justices of this Court concurred, has already raised this problem in a separate opinion. (Separate opinion of Mr. Justice Torres Rigual in *People* v. *Ayala Ortiz, ante,* p. 163.) I believe this Court should exercise its power to reverse on the facts with a great sense of self-discipline.